APPEAL OF THE NILES FIRE BRICK CO.
APPEAL OF MARGARETTA T. CLINGAN.
APPEAL OF MARY T. WADDELL.
APPEAL OF W. AUBREY THOMAS.
APPEAL OF ESTATE OF THOMAS E. THOMAS.

Docket Nos. 2628, 4227–4230. Promulgated February 2, 1927.

1. PARTNERSHIPS.—When the heirs of John R. Thomas, under the terms of his will, acquired the property known as The Niles Fire Brick Co. and continued the operation of the same as a going business, they thereby became, in the view of the law, a partnership.

2. Although these same heirs later joined in some of the acts required for the formation of a corporation, the property and the business of the partnership were not conveyed to the corporation, and the evidence does not support the Commissioner's claim that the income of the business should be taxed as the income of a corporation or association.

*W. W. Spalding, Esq.*, for the petitioners.
*E. C. Lake, Esq.*, for the Commissioner.

These appeals were consolidated at the hearing by agreement of counsel. They involve the following determinations by the Commissioner:

| Name. | Deficiency. | | Overassessment. | |
|---|---|---|---|---|
| | Year. | Amount. | Year | Amount. |
| The Niles Fire Brick Co | 1919 | $2,416.23 | | $492.15 |
| Margaretta T. Clingan | 1918 | 9,548.31 | 1919 | |
| Mary T. Waddell | 1918 | 11,066.30 | 1919 | 367.86 |
| W. Aubrey Thomas | 1918 | 20,608.88 | 1919 | 651.43 |
| Estate of Thomas E. Thomas | 1918 | 22,133.50 | 1919 | 1,470.92 |
| Jan. 1 to Nov. 10 | 1920 | 260.47 | | |
| Nov. 10 to Dec. 31 | | | 1920 | 83.31 |

The sole question involved in these appeals is whether The Niles Fire Brick Co. was a corporation during the years in question and the distributions made by it were dividends, or whether the business was a partnership and the profits therefrom should be taxed to the individual members as partnership profits.

### FINDINGS OF FACT.

The Niles Fire Brick Co. was organized as a partnership in 1872 by John R. Thomas and Lizzie B. Ward, for the purpose of engaging in the manufacture of fire brick. The business is located at Niles, Ohio, where it has operated since the date of organization. In 1879, John R. Thomas acquired the interests of his partner and, thereafter, until the date of his death, January 25, 1898, owned and conducted the business as an individual enterprise. So much of the will of John R. Thomas as relates to the issues here involved reads as follows:

Item 6th

After payment of the charges and legacies as provided in the prior items of my will have been made, I give and devise all the rest and residue of my estate, of every kind and wherever situate, including the one-third devised as aforesaid to my wife, on the termination of her interest in the use thereof by death or marriage to my five children, viz: John M. Thomas, Thomas E. Thomas, William A. Thomas, Mary A. Thomas and Margaretta Thomas Clingan, and their heirs, share and share alike; and in case of the death of either of them, their children to take the parents share.

In the division of my estate under my will, amongst my said children, I direct that no account or charge be made against either of them for any moneys or property heretofore received from me. It is further my wish and I so direct that so far as practicable, all my property, except that part given to my wife, for her life or so long as she remains my widow, be divided amongst my said children within two years after my decease.

Item 7th

I do hereby nominate and appoint my wife Margarett Thomas, and my sons John M. Thomas, Thomas E. Thomas and William A. Thomas, Executors of this my last Will and testament.

I hereby authorize and empower my said Executors to carry on my business of operating the furnace in the City of Niles, Ohio, known as The Thomas Furnace Company, and my business of manufacturing fire brick known as The Niles Fire Brick Company, for a period of not to exceed two years after my

decease, Hereby authorizing my said Executors to employ in said business the capital that I have invested and employed therein at my decease, but no more. It being my desire and I hereby direct that my estate shall be fully settled up within two years after my decease.

Under this will the five children named therein acquired the business known as The Niles Fire Brick Co. and the assets thereof in equal shares. In December, 1900, they filed with the Secretary of State of Ohio the following articles of incorporation:

THESE ARTICLES OF INCORPORATION OF THE NILES FIRE BRICK COMPANY

WITNESSETH, That we, the undersigned, a majority of whom are citizens of the State of Ohio, desiring to form a corporation, for profit, under the general corporation laws of said State, do hereby certify:

FIRST. The name of said corporation shall be The Niles Fire Brick Company.

SECOND. Said corporation is to be located at Niles in Trumbull County, Ohio, and its principal business there transacted.

THIRD. Said corporation is formed for the purpose of mining, quarrying, manufacturing, buying, and selling fire clay, coal and stone and products of clay, coal and stone contracting to build and repair furnaces of various kinds and all things incident to either or all of the foregoing objects and purposes.

FOURTH. The capital stock of said corporation shall be sixty thousand dollars, ($60,000.00), divided into six hundred (600) shares of one hundred dollars, ($100.00) each.

IN WITNESS WHEREOF, We have hereunto set our hands, this twenty-eighth day of December, A. D. 1900.

> JOHN M. THOMAS
> THOMAS E. THOMAS
> W. AUBREY THOMAS
> MARGARETTA T. CLINGAN
> MARY A. THOMAS

No further steps were taken to complete a corporate organization. No stock was issued and there is no record that any payments were made for stock. Nor is there any record of transfer or attempted transfer of property for stock. No directors or officers were elected and no by-laws were adopted until 1918. There were no meetings or pretended meetings of stockholders until March 30, 1918, when a formal meeting of the heirs of John R. Thomas was held and by-laws were adopted. The minutes of this meeting were designated as minutes of the meeting of the stockholders and minutes of the meeting of the directors of The Niles Fire Brick Co.

Upon the death of John R. Thomas, management of the business passed to Thomas E. Thomas. From that time until his death in 1920 he had absolute control over the business and conducted it as he saw fit. John M. Thomas, who had been known as treasurer of the company during the period of his father's proprietorship, went into business in Duluth, Minn., in 1899, and later in Milwaukee,

Wis., while W. Aubrey Thomas was first in business in Milwaukee and later at Jenifer, Ala. Neither of these men took an active part in the management of The Niles Fire Brick Co. during the lifetime of Thomas E. Thomas. The remaining heirs of John R. Thomas were daughters and have never at any time participated in the conduct of the business.

From 1898, Thomas E. Thomas assumed the title of general manager and was designated on some of the company stationery as president. David S. Parry, who was first employed in 1917, was known as secretary and treasurer and became manager upon the death of Thomas E. Thomas in 1920. These were the only official titles used in connection with the business. The company ledger for 1894 to 1906 was labelled "Ledger—Niles Fire Brick Company," while the ledger for the years 1906 to 1913 was designated "Ledger A—The Niles Fire Brick Company." The word "Incorporated" was never at any time used in connection with the name of the company. Letterheads have practically all been in the following form "The Niles Fire Brick Company." In some instances the words "Established 1872" have been added.

When money was borrowed for use in the business, notes were signed by Thomas E. Thomas, as general manager, and then endorsed by him personally. At times notes were also endorsed by John M. Thomas.

Capital stock and surplus accounts were opened on the books in 1894. On April 20, 1899, a notation explanatory of the capital stock account was made on the books to the effect that it had been contemplated that the company should be incorporated "which was not done as contemplated." At the time the capital stock account was opened, $60,000 was credited to that account. In 1899 this account was reduced in the amount of $23,202.46, and in December, 1906, it was restored in that amount and has since remained at $60,000.

Since the death of John R. Thomas, it has been customary for his heirs to withdraw money from the business whenever they desired. No specific authorization was deemed necessary and when the drafts or checks were presented for payment they were always honored and the individual account of the person making the withdrawal was charged with the amount. There was never any regularity or uniformity in connection with such withdrawals.

The company books for 1909 show an entry of $2,000 on account of salary. The explanation is "Directors salary for 1909." Similar entries appear on the books for the years 1910, 1911, and 1912.

For the years involved in these appeals, corporation forms were used in making income-tax returns for The Niles Fire Brick Co.

A power of attorney filed with the Bureau of Internal Revenue authorizing an accounting firm to represent the company in tax matters was executed in the manner of a corporation, thereby conforming to the form of the return previously filed. On the estate-tax return of Thomas E. Thomas appears an item of 120 shares of stock in The Niles Fire Brick Co. valued at $72,000. The basis of this valuation was the net worth of the business.

Prior to January 1, 1918, there had been no distribution of the profits of the business among the owners and, with the exception of the withdrawals referred to above, they had received nothing from the company. The accumulated earnings were used in purchasing certain stock in the Trumbull Steel Co., the Youngstown Sheet & Tube Co., the Niles Trust Co., the Brier Hill Steel Co. and the Mahoning Valley Steel Co. These purchases were made prior to January 1, 1918, and the stocks so purchased were distributed in 1918 equally among the owners of the business in the amount of $77,600 each.

OPINION.

TRUSSELL: In the case of *McFarlane* v. *McFarlane* (1894), 31 N. Y. S. 272, the court said:

The mere fact of the bequest to them, by will, of the net estate in question, and of the business, did not constitute them partners, but merely made them joint owners; but their election to continue the business, each contributing thereto his share of the property so bequeathed to him, rendered the relation between them that of copartners, and the property copartnership property.

This rule of law has been long established and is supported by many decided cases. It must therefore be taken as established that when the heirs of John R. Thomas acquired, under his will, the properties and the going business known as The Niles Fire Brick Co. and continued to operate the same they thereby became a partnership and continued in the relation of partners until such time as they, by definite and specific acts, changed their relation of partners to some other legal relationship. Has such a change been made, and, if so, when? It has been shown that in December, 1900, nearly three years after the partnership relation became established, these same heirs of John R. Thomas joined in the execution of articles of incorporation and filed the same with the proper officers of the State of Ohio. The statutes of the State of Ohio, as then existing, required that persons forming a corporation must do certain acts and things, among which are subscriptions for capital stock; the payment of not less than 10 per cent of such subscriptions; the holding of corporate meetings; and the election of directors and officers. None of these things were done by the parties connected

with the business here under consideration. In *State ex rel. Attorney General* v. *Fidelity & Casualty Ins. Co. of New York* (1892), 49 Ohio St. 440; 31 N. E. 658, the court held that the making and filing of articles of incorporation in the office of the Secretary of State did not make an incorporated company, and that no company existed within the meaning of the statute until the requisite stock had been subscribed and paid in and the directors chosen.

In the case of *American Ball Bearing Co.* v. *Adams* (1915), 222 Fed. 967, the court said:

   * * * The Ohio law differs from the law of many states, in that the mere filing of articles of incorporation in due form does not create or bring into existence a corporation, notwithstanding the provision of G. C. § 8629, that a certified copy of articles of incorporation shall be prima facie evidence of the existence of the corporation therein named. * * *

And in the same case the court, referring to these specific requirements of the Ohio statutes, continued:

   That these are not merely directory provisions of law, but are mandatory, and must be complied with before a corporation can come into existence under Ohio law, is sufficiently established by *Telephone Company* v. *Cincinnati*, **73** Ohio State 64, 76 N. E. 392 [1905] * * *.

It thus seems that The Niles Fire Brick Co., by virtue of the action of its owners in December, 1900, did not thereby become a corporation.

The only other act of the owners of The Niles Fire Brick Co. in respect to the formation of a corporation was taken some time in the year 1918 when such owners apparently held a meeting and went through the form of adopting corporate by-laws. This action in connection with the previous action in December, 1900, was equally ineffective of establishing a corporation within the view of the Ohio statutes. After carefully considering all the facts shown in the record of this case and the provisions of the statutes of the State of Ohio governing the organization of corporations and the interpretation placed upon such statutes by the courts, we are forced to the conclusion that the owners of The Niles Fire Brick Co. never perfected an organization as a corporation.

Furthermore, if it could be held that the form of articles of incorporation executed by the five heirs of John R. Thomas and filed with the Secretary of State of Ohio in December, 1900, together with the other things done in respect thereto, did actually create and bring into being a corporation, can it be found that such corporation was, during the years 1918, 1919, and 1920, a living entity engaged in carrying on any business and producing income and profits subject to tax under the then existing income-tax legislation? The record of this proceeding shows clearly that the answer to that question is in the negative. No going business and no property of

any nature whatsoever was ever transferred or conveyed to such a corporation. No shares of such a corporation were ever issued, and no person ever became a *bona fide* stockholder of such a corporation. No one was ever elected a director and no one was ever elected an officer of such a corporation. If then in fact such a corporation was created and existing, it was a mere empty shell, with no capital, with no stockholders, with no directors, and with no officers. It did no business of any nature or kind whatever and produced no income subject to any income-tax law.

The record is equally silent respecting any act or thing done by the owners of The Niles Fire Brick Co. which could be construed to bring them within the category of an association within the meaning of paragraph 2 of section 1 of the Revenue Act of 1918.

We are thus brought irresistibly to the conclusion that the partnership, made up of the heirs of John R. Thomas, when they acquired the business known as The Niles Fire Brick Co. in 1898, has never changed its character; has never become a corporation; has never been merged into a corporation or an association; that the partnership relation between the owners of this business has never changed; that the duties, responsibilities, and liabilities of partners still rest upon each member of that partnership; and that both the partnership organization and the partners individually were, during the years here under consideration, required to comply with those provisions of the Revenue Act of 1918 imposing duties and responsibilities upon partnerships or the members of partnerships, and that they are equally entitled to the benefits, if any such exist, under such Act in respect to partnerships and members thereof, and that during said years the gains and profits and income produced by the business of The Niles Fire Brick Co. must be taxed as the income of the members of such partnership.

Our attention has been called to the case of the *McDonald Coal Co.* v. *Heiner*, 9 Fed. (2d) 992, in which case the decision of the District Court has been affirmed by the United States Circuit Court of Appeals for the Third Circuit. 16 Fed. (2d) 274. The McDonald Coal Co. was in court suing to recover income and profits taxes paid by it under the corporate tax provisions of the Revenue Acts of 1917 and 1918, claiming that during the years in question the McDonald Coal Co. was a partnership and not a corporation. The trial court found that in 1906 three persons formed a partnership and procured leases on certain coal lands; that they operated these leases as a partnership until 1909, when the same three persons became the incorporators of a corporation known as the McDonald Coal Co., and that from 1909 until the time when the case was on trial the corporation had operated the same coal

land leases procured by the former partnership; that said leases had never been assigned to the corporation for the reason that the lessor refused to consent to the assignment, although the lessees had persistently tried to procure such consent. The court further found that at the organization of the McDonald Coal Co. the incorporators paid in to the company an operating plant said to have cost $50,000, and received in exchange therefor capital stock of the corporation of a par value of $6,000. During the years in question the McDonald Coal Co. reported the income from the operations of the coal land leases as its income; paid corporate taxes thereon; made various representations concerning the corporate records, and at one time secured an abatement of taxes based upon a showing of certain corporate actions in respect to officers' salaries. The corporation had continually held itself out to the world as a corporation carrying on the business of operating these coal leases, and it had permitted itself to be sued as a corporation in a damage suit in the state courts of Pennsylvania and raised no question as to its corporate existence or liability.

The record of the instant case is very different from that disclosed by the reported decision in the case of the McDonald Coal Co. In the case of The Niles Fire Brick Co. it is established that no corporate stock was ever issued; nothing was ever paid in for any such stock; it never held itself out to the world as a corporation; and, so far as the record discloses, the only thing which it ever did in the guise of a corporation was the making of its income and profits-tax returns upon corporate forms.

We are, therefore, of the opinion that for the year 1919 there is no deficiency in income taxes against The Niles Fire Brick Co. as an organization, and that the deficiencies and overassessments recited in the deficiency letters as against the other four petitioners herein must be recomputed in accordance with the foregoing opinion.

> An order of redetermination in each case will be made upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.